[Civ. No. 27050. Second Dist., Div. One. July 8, 1963.]

PHYLLIS WEISS et al.,[1] Plaintiffs and Appellants, v. TADAO BABA, Defendant and Respondent.

[1]The designation of party plaintiff was erroneous. The minor child is the party and the guardian *ad litem* merely appears for said minor child. Hence, the action should have been captioned ''PHYLLIS WEISS and VIVIAN AURA WEISS, a minor, by PHYLLIS WEISS, her guardian ad litem.'' (2 Witkin, Cal. Proc., Pleading, § 26, p. 1003; Code Civ. Proc., § 372.) However, the failure to so caption the complaint was purely a technical error in no way prejudicial to defendant. (*Martin* v. *Pacific Southwest Royalties, Inc.*, 41 Cal.App.2d 161, 170 [106 P.2d 443].) Defendant did not raise any objection relative to the designation of party plaintiff.

Irving H. Green for Plaintiffs and Appellants.

Parker, Stanbury, McGee, Peckham & Garrett and Roger W. Roberts for Defendant and Respondent.

FOURT, J.—This is an appeal by plaintiff (i.e. widow and minor child) from a judgment entered after the jury returned a unanimous verdict in favor of defendant in an action for wrongful death.

A résumé of the facts is as follows:

The automobile accident with which we are concerned occurred on December 31, 1959, between 5 and 5:30 p.m. (i.e., it was dark and both automobiles had their headlights on) at the intersection of Rosewood Avenue and Crescent Heights Boulevard in the City of Los Angeles. Crescent Heights Boulevard is an arterial roadway where it intersects with Rosewood Avenue. Traffic in either direction on Rosewood Avenue is controlled by boulevard stop signs. The area is one of restricted visibility due to a combination of hedges, large palm trees and dwellings placed relatively close to the roadway edge.

Plaintiffs' decedent was traveling eastbound on Rosewood Avenue and defendant was traveling southbound on Crescent Heights Boulevard when the intersection accident occurred. There was no independent eye witness testimony relative to

the precollision movements of either decedent or defendant. All of the evidence relating to the collision was obtained from a police officer who investigated at the scene after the collision and at the hospital shortly thereafter; from defendant's testimony at the trial, his signed statement to an investigator, deposition and answers to interrogatories; from neighbors familiar with the intersection and from expert testimony. There was conflict as to whether the streets were wet at the time of the collision. Defendant was familiar with the area and had frequently traveled through the intersection, which was in a residential section. Any other pertinent facts will be set forth in the body of the opinion under appropriate headings.

Plaintiffs' first contention is that the trial court erred in permitting defendant to contradict his previous pretrial statements (i.e., defendant's answers to interrogatories, deposition, statements to investigator and police officer).[2]

Plaintiffs apparently take the position that such pretrial statements are elevated to the status of judicial admissions as distinguished from evidentiary admissions. ▆ A judicial admission is not merely evidence of a fact. It is a conclusive concession of the truth of a matter which has the effect of removing it from the issues. (See Witkin, Cal. Evidence, § 224, p. 251.)

The authorities cited by plaintiffs do not support their position. As an example, the case of *International Carbonic Engineering Co.* v. *Natural Carbonic Products* (D.C.S.D. Cal. 1944) 57 F.Supp. 248, 253, affd. 158 F.2d 285, involved admissions made in response to requests for admissions. ▆ It is stated in *Cembrook* v. *Superior Court*, 56 Cal.2d 423, 429 [15 Cal.Rptr. 127, 364 P.2d 303] that "[10] Most of the other discovery procedures are aimed primarily at assisting counsel to prepare for trial. Requests for admissions, on the other hand, are primarily aimed at setting at rest a triable issue so that it will not have to be tried."

A reading of the transcript discloses that plaintiffs' attorney skillfully exploited defendant's various contradictions. The jury was properly instructed relative to judging credibility, effect of false testimony, factors to consider in weighing testi-

---

[2]Defendant's testimony at the trial was at variance with his various pretrial statements relative to whether he saw decedent's automobile prior to the collision, decedent's speed, whether defendant applied his brakes before the collision, whether the pavement was wet or dry and the nature of defendant's injuries (claiming head injuries at the trial).

mony and the use of a deposition at the trial (i.e. a modification of a BAJI 31-A (rev.).[3]

Plaintiffs' next contention is that the trial court erred in permitting defendant to reopen his case after all sides had rested and plaintiffs had begun their argument.[4]

In support of this contention plaintiffs advance several arguments. *First*, that the ''impact of Morelli's entrance unduly influenced the jury, *as it probably appeared to them that Morelli was an expert of the Court.*'' (Italics added.)

---

[3]The modification of BAJI 31-A (rev.) as given by the trial court provides as follows:

''Prior to the trial, the deposition was taken of a party, and portions of it were read into evidence. If, in said deposition (he) made contradictory statements or any statements in conflict with (his) testimony here in court, you may consider such conflicts and any explanations given therefor in testing (his) credibility, in like manner as if all such testimony were given originally at the trial. The deposition, too, was given under oath.

''If any statement in a party's deposition constituted an admission against interest, it may be considered by you in determining the truth, or falsity of the fact to which the admission relates.''

[4]The reporter's transcript discloses the following in pertinent part:

''MR. ROBERTS: Defendant will rest, your Honor.

''THE COURT: Defendant rests.

''Ladies and gentlemen of the jury, the Court explains to you that both sides have rested their case. Now is the time that counsel have the right to sum up their case. It is sometimes called a closing argument. It is sometimes called a summation. Under the parliamentary rules that govern trials, the plaintiff opens and closes, and we say that plaintiff makes the opening summation, and defense makes it summation, and then the plaintiff's [sic] counsel may reply to anything that is developed by the defendant, so you will hear three separate discourses, arguments, summations, two by the plaintiff [sic] and one by the defendant. Plaintiff [sic] will first speak, and now who is going to make the opening?

''MR. FELDMAN: Mr. Janger will make the opening, and I will make the closing, your Honor.

''MR. ROBERTS: A double-barreled attack.

''THE COURT: Again, the Court cautions the jury that these are the statements of counsel. They are not evidence. Counsel do try to bring together the facts of the case which they believe supports their particular side. You may proceed.

''MR. JANGER: Thank you, your Honor.

''Your Honor, ladies and gentlemen of the jury: I just want to say we are limited in time that we have to speak with you and discuss this matter, and the longer I talk with you, the less you are going to be able to hear from Mr. Feldman, and because he is more experienced than I am, I am going to try to be as brief as I can.

''I think we should start in discussing this case with the police report which Mr. Baba now says he does not recall giving. These police officers, Officer Marsh who took the statement, and Officer Hamilton who was here in court——

''MR. ROBERTS: Excuse me.

''Your Honor, I have just received word which makes me ask the Court for about a 15-minute recess, if I may. It may be I will ask for permission to reopen. I realize that it is out of order, but I did not know about this call. It just came.

In the light of what appears in the reporter's transcript (see footnote 4) it is difficult to understand how plaintiffs can advance this argument. It is without merit.

*Second,* that Morelli's testimony contradicted defendant's various pretrial statements. Morelli, as an expert, gave his opinion as to the speed of defendant's car and of decedent's car.

█ As was set forth in answer to plaintiffs' first contention, pretrial statements, whether in the form of statements given to police, or investigators, depositions or answers to interrogatories do not assume the status of judicial admissions. They constitute evidentiary admissions. █ A party is not precluded from presenting evidence at the trial which is at variance with pretrial statements. He does, however, by so doing run the risk of being impeached.

*Third,* that "no showing of diligence was made by defense counsel to produce Morelli before the close of the evidence and the beginning of plaintiff's [*sic*] counsel's argument, there was no excuse for [*sic*] reason for permitting same."

█ It is well established that to assign rulings or conduct as error, a timely objection must be made. (*Newman* v. *Los Angeles Transit Lines,* 120 Cal.App.2d 685, 695 [262 P.2d

"THE COURT: Is it something that relates to this case?

"MR. ROBERTS: I think I can get it cleared up in ten minutes and find out what it is going to be.

"THE COURT: Well, it is rather unusual, but I will rely on counsel's representation as an officer of this court that it is a matter of importance.

"MR. ROBERTS: Definitely.

"THE COURT: Do you think it will take 15 minutes to find out? I want the argument concluded today if you do not reopen.

"MR. ROBERTS: I have a call waiting for me here about a potential witness.

"THE COURT: Ladies and gentlemen of the jury, we will take a recess. The bailiff will advise you when we will resume. It will be ten minutes at least.

" (afternoon recess.)

"MR. ROBERTS: *May the defense have the right to reopen and call a witness, your Honor?*

"THE COURT: *Yes. Ladies and gentlemen of the jury, I think you observed the events which transpired. The defendants [sic] had a witness they [sic] thought might not be available and they [sic] rested, and the Court in exercise of its discretion has permitted them [sic] to reopen to put on this witness. So we will not have the summations at this time that the Court had indicated we would have.*

"DINO MORELLI,

"called as a witness on behalf of the defendants, being first duly sworn, was examined and testified as follows:

"THE CLERK: State your name, please.

"THE WITNESS: Dino Morelli.

"DIRECT EXAMINATION.

"BY MR. ROBERTS: . . ." (Italics added).

95]; *Gist* v. *French,* 136 Cal.App.2d 247 [288 P.2d 1003].)

In addition to the above three arguments, plaintiffs also assert that (a) Morelli's testimony was incredible and (b) that plaintiffs did not have sufficient time adequately to prepare their witnesses to rebut Morelli's testimony. The answer to the first assertion (a) above mentioned is that the question of credibility is for the trier of fact and not the appellate court and the answer to (b) is that if such was the case plaintiffs should have moved for a continuance and secured time within which adequately to prepare for a proper rebuttal.

Plaintiffs' next contention relates to a purported error with respect to an instruction, namely a failure to instruct on sounding a horn.

The rules relating to failure to give instructions are set forth in *Mau* v. *Hollywood Commercial Buildings, Inc.,* 194 Cal.App.2d 459, 466 [15 Cal.Rptr. 181], as follows:

"[1]   Each party is entitled to have his theory or theories of the case submitted to the jury in accordance with the pleadings and proof where there is substantial evidence in the record justifying the giving of the instructions.   [2] The existence or nonexistence of substantial evidence is a question of law.   [3] In ascertaining whether it was error for the trial court to refuse to give appellant's instructions, this court views the evidence in the light most favorable to appellant. (*Sills* v. *Los Angeles Transit Lines,* 40 Cal. 2d 630 (255 P.2d 795); *Dyer* v. *Knue,* 186 Cal.App.2d 348 [8 Cal.Rptr. 753]; *Edgett* v. *Fairchild,* 153 Cal.App.2d 734, 738 [314 P.2d 973].)"

Plaintiffs proffered an instruction predicated upon section 27001, Vehicle Code, as follows:

"You are hereby instructed that at the time of the accident, Section 27001 of the California Vehicle Code read as follows:

"The driver of a motor vehicle when reasonably necessary to insure safe operation shall give audible warning with his horn."

There was evidence from which the jury could have determined that defendant owed a duty to sound his horn.

Officer Hamilton testified relative to statements made to him by defendant. According to Officer Hamilton's testimony defendant stated that he (defendant) was driving 35 to 40 miles per hour and as he approached the intersection of

Rosewood he saw lights and knew that there was a car, but couldn't see any; that he was 20 to 40 feet north of the intersection when he first observed decedent's vehicle eastbound on Rosewood. There was evidence that vision would be obstructed at the intersection of Crescent Heights Boulevard and Rosewood by tall hedges, palm trees and parked cars and that defendant was familiar with the intersection. In defendant's answers to interrogatories he admitted that he had seen decedent's automobile before it entered the intersection.

What is stated in *Rush* v. *Lagomarsino,* 195 Cal. 308, 320, [237 P. 1066], is apposite:

". . . [I]t was certainly a matter for the jury to determine whether or not under all the circumstances it was necessary for the defendant to sound his horn as a warning of danger, and the failure to submit that question to the jury as requested was error which doubtless redounded to the prejudice of the plaintiff."

We believe that the trial court erred. No useful purpose would be served in discussing plaintiffs' other assertions.

The judgment is reversed.

Wood, P. J., and Lillie, J., concurred.

Respondent's petition for a hearing by the Supreme Court was denied September 4, 1963.